### THE AMOS C. BARSTOW.

### McCALDIN et al. v. PROVIDENCE & S. STEAMSHIP CO.

(Circuit Court of Appeals, Second Circuit. March 5, 1895.)

COLLISION IN EAST RIVER—VIOLATION OF STATE STATUTE—LOOKOUTS.

A propeller, having come around the Battery in New York harbor, was proceeding up the East river against the tide at a speed of six knots, on a course parallel with, and about 400 feet from, the ends of the piers. When a little below pier 3, she saw a tug, which had just got under full speed on a trip across to Brooklyn from the end of pier 4. She was observed at the same time by the tug, which immediately signaled that it would cross her bows. The propeller assented, and immediately reversed, while the tug gave no more attention to her, and was allowed to fall off with the tide, until collision occurred. *Held*, that both were in fault,—the propeller for keeping so near the piers, in violation of the state statute, which required her to go as near mid-river as possible, and for failure to keep a vigilant lookout; and the tug for failing to observe the propeller seasonably, and for not keeping her head to the tide while crossing the other's bows. 50 Fed. 620, affirmed.

Appeal from the District Court of the United States for the Southern District of New York.

This was a libel by James McCaldin and Joseph McCaldin against the propeller Amos C. Barstow, the Providence & Stonington Steamship Company, claimants, to recover damages for a collision between the said propeller and libelants' tug James A. Garfield; also a libel by Henry Robin against both the Garfield and the Barstow to recover for personal injuries and for property lost or damaged. The

owners of the tug also filed a petition for limitation of liability. There were decrees below holding both vessels in fault, awarding damages against them in favor of libelant Robin, and limiting liability in respect to the tug. 50 Fed. 620. Appeals were taken by the claimants of the tug as against the Barstow and her owners, and by said Robin as against the tug and her claimants.

Carpenter & Park, for owners of the Garfield.
Miller, Peckham & Dixon, for claimants.
Goodrich, Deady & Goodrich, for Henry Robin.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. The collision which is the subject of this controversy took place in broad daylight, off pier 4, New York City, in the East river, between the tug Garfield and the propeller Barstow. There was an ebb tide, running at the time between three and four knots an hour. The Barstow had come around the Battery from the North river, intending to make pier 11, and was proceeding up the East river at a speed of about six knots against the tide, on a course parallel with, and about 400 feet from, the ends of the piers. She had gradually overtaken the tug Atlas, which had also come round the Battery, and was bound for pier 4, on a course between the Barstow and the piers. The Garfield had been lying outside some other boats at the end of pier 4, and had just started on a trip across the river to Brooklyn, heading somewhat against the tide. Neither the Garfield nor the Barstow observed one another until the Barstow had reached a point a little below and off pier 3, and the Garfield had got under full speed,—about seven knots an hour. The Atlas was then lying nearly stationary, about 100 feet away from, and a little below, the end of pier. 3. As soon as the Garfield observed the Barstow, she concluded to cross her bows, and gave the Barstow a signal of two whistles. The Barstow immediately answered with a similar signal, reversed her engines at full speed, and hard-starboarded her helm. When the signals were exchanged, the Garfield was within a couple of hundred feet of the intersecting point in the courses of the two vessels, and the Barstow was not much further distant. The master of the Garfield assumed that the Barstow would alter her course to port, and assist the Garfield in crossing her bows, and he paid no attention to the movements of the Barstow after the signals were exchanged. Instead of keeping the Garfield's head to the tide, he allowed her to fall off her course, and swing with the tide towards the bows of the Barstow. The Barstow did not have time to alter her course to port materially before the collision, and, although she was brought almost to a standstill, the Garfield's starboard side came in contact with her stem, and the Garfield rolled over and capsized.

Upon these facts we think both vessels should be condemned for contributory fault. The Barstow was proceeding in violation of a state statute which makes it the duty of steam vessels, when navigating the East river between the Battery and Blackwell's Island,

to be kept as near as possible in the center of the river, except when going into or out of their usual berths. This statute was doubtless enacted in view of the fact that at that part of the East river a large number of vessels are constantly entering and leaving their berths, and those leaving frequently have little opportunity for the observation of vessels passing up or down the river near the ends of the piers. Proceeding where she had no right to be as against vessels leaving their berths, it was especially incumbent upon the Barstow to maintain such vigilant observation and moderate speed as would enable her to take all necessary precautions, not only to avoid collision, but also not to embarrass such other vessels. If she had not been remiss, she could have seen the Garfield as the latter started from her pier, and could then have moderated her speed in season to give the Garfield ample room to proceed safely. As it was, she did not discover the Garfield until the Garfield's signal to her, and her own conduct demonstrates that danger of collision was then imminent. As she was being navigated in violation of a statutory regulation intended to prevent collision, the presumption is that her conduct was a contributory cause of the collision; and, although it is possible, and perhaps probable, that the collision would not have taken place if the Garfield had kept headed sufficiently against the tide, that circumstance does not absolve the Barstow. The evidence is not decisive that her fault could not have contributed to the disaster. The Garfield was in fault because she failed seasonably to observe the Barstow, and also because she neglected to keep her head to the tide while crossing the Barstow's bows. The situation, after the vessels discovered one another, was one where she could not well have gone under the stern of the Barstow. But, notwithstanding the presence of the Atlas may have intercepted her view of the Barstow until she got fairly under way, if she had maintained vigilant observation after starting and before she got under full speed, she could have seen the Barstow in time to reverse and stop her headway before reaching the point of intersection in the courses of the two vessels. It is probable, also, that if, when she first saw the Barstow, she had altered her course sharply to port, and held it there, she would have cleared the Barstow's bows. There was but little difference in the distance of either vessel from the point of intersection in their courses, and both were going at about the same speed; but, as the tide would materially deflect the course of the Garfield while passing the intervening distance, it was imperative for the safety of her maneuver that she should keep her head well against it, and maintain a course sufficiently to port to counteract the influence of the current. She failed to do this, apparently because of her master's reliance upon the ability and inclination of the Barstow to cooperate by going to port. He probably miscalculated the Barstow's speed. But that circumstance does not excuse his previous neglect of observation, or his subsequent inattention to the navigation of his vessel. The decree of the district court should be affirmed, with interest, and costs of this court.