THE WILLIAM E. CLEARY.

THE TRANSFER NO. 10.

(Circuit Court of Appeals, Second Circuit. April 11, 1916.)

No. 232.

COLLISION &95(2)—TUGS WITH TOWS IN EAST RIVER—FAILURE TO KEEP NEAR MIDDLE OF CHANNEL.

A transfer tug, with two car floats alongside, *held* solely in fault for a collision at night in East River between one of her tows and a barge in tow alongside of another tug, which was maneuvering to pass the end of a pier on the Manhattan side against the flood tide, and which stopped and backed on the approach of the Transfer to keep out of the way, on the ground that the Transfer was coming down too close to the piers, instead of keeping near the middle of the river, as required by the regulations; the collision having occurred not more than 300 feet from the pier end.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. &95(2).]

Coxe, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in admiralty for collision by Clarence L. Bleakley, owner of the barge U. H. No. 66, against the steam tug William E. Cleary, the Cornell Steamboat Company, claimant, and the steam tug Transfer No. 10, the New York, New Haven & Hartford Railroad Company, claimant, impleaded. Decree for libelant against the Cleary, and her claimant appeals. Reversed, and decree entered against the Transfer No. 10.

This is an appeal from a decree in admiralty of the District Court entered on August 2, 1915, after a hearing upon a libel in rem. The occasion of the suit was injuries to the barge U. H. No. 66, loaded with a cargo of stone and injured by contact with a railroad float in tow of Transfer No. 10 at 9 p. m. on January 30, 1914. The owner of the barge U. H. No. 66 filed a libel in rem against the steam tug William E. Cleary, which had her in tow at the time of the collision. The Cleary's owners appeared and answered, denying fault, and petitioned in the Transfer No. 10, whose floats came in contact with the U. H. No. 66. The New York, New Haven & Hartford Railway Company claimed the Transfer No. 10, and answered the petition of the Cleary's owners, and also answered the libel. The decree dismissed the petition against the Transfer No. 10, with costs, and awarded damages against the William E. Cleary for $1,436.40, with costs and interest.

The facts are as follows: The U. H. No. 66 on the 30th day of January, 1914, was taken in tow by the tug Terry, belonging to the Cornell Steamship Company, at the foot of Fifty-Fifth street in the North River, bound for the south side of Pier 42 in the East River, where her cargo was to be discharged. She was taken into a general tow at about 4:30 p. m. that day; the weather being clear, the wind light, and the tide flood. The Cleary was a helper tug engaged with the tow in picking out separate barges and taking them to their destination. After the tow had rounded the Battery and had gone up the East River to about Corlear's Hook, the Terry rounded to, facing the flood tide and letting her tow tail off up the river, opposite Cherry street. She waited in this position some time until the Cleary, which had been towing two other barges to Wallabout Bay, came back and took upon her starboard hand the barge U. H. No. 66. This was well above Corlear street. The Cleary proceeded along the port side of the tow, keeping inshore so as to get the effect of an eddy which makes at that point upon the flood tide close in towards Corlear's Hook Park. Pier 42 is just south of the Jackson Square pier, and in order to reach it the Cleary had to starboard her wheel somewhat so as to clear the end of the pier. In doing so she exposed the starboard bow of the barge at a substantial angle to the full force of the flood tide, which is close to the pier ends at that point. This caused the barge to swing off so much to port that the Cleary had to drop back and to try a second time to clear the pier ends by keeping further off, so that she would have to starboard only a little and not expose the bow at so great an angle to the tide. She had worked down until she was just about off the end of the Jackson Street pier and in a position almost to clear it.

Meanwhile, the Transfer No. 10, with a car float on either hand, was coming down the river and had starboarded around Corlear's Hook under the tail of the Terry's tow, which had remained in place. She passed the tow on her starboard hand and eventually came in sight of the Cleary in a position which seemed to the Transfer's captain to be hanging to the end of the Jackson Square pier. Shortly thereafter, the Transfer blew two blasts, and her captain says that she got the same in answer. The captain of the Cleary says that, at once upon hearing the blasts of the Transfer, he looked about and was afraid, if he ported, he would expose his stern to the Transfer, which was coming down too close for safety. Therefore he backed and blew an alarm, and he continued backing until the time of the accident. The Transfer for a time continued her course, but, seeing the lights on the Cleary change, and eventually getting her red light half a minute or less before the accident she starboarded and backed. Through the backing of the Cleary, probably coupled with the strength of the tide, the barge was swung strongly

to port nearly across stream, and her port bow struck the starboard car float a little forward of amidships, causing the damage in question.

Kirlin, Woolsey & Hickox, of New York City (J. P. Kirlin, William H. McGrann, and Robert S. Erskine, all of New York City, of counsel), for appellant.

C. M. Sheafe, Jr., of New York City, for appellee Transfer No. 10.

Peter Alexander, of New York City, for appellee Bleakley.

Before COXE and WARD, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge. The important time in this case was after the Transfer had cleared the Terry and caught sight of the Cleary below her and on her starboard bow, up to which time the Transfer's navigation could have no relation to the Cleary. Her subsequent conduct must be judged by what appeared to her at that time. The District Judge has found that the case was not one of overtaking vessels, and we agree with him. So far as the Transfer could see, the case was one of special circumstances, and we find no fault in the navigation of the Transfer after that time. Her only possible fault was her position. As the District Judge has heard all the witnesses, and among them all has chosen Lundquist, the master of the Transfer, for his confidence, we should be governed by his finding, and we should therefore accept the finding that the collision occurred about 300 feet off the pier ends. There is, it is true, considerable difficulty in seeing just how the Cleary, which had been continually backing, could get the bow of the barge so far from the pier ends, especially as the witnesses assert that the tide runs true at that point. It is, moreover, notorious that the estimate of distances, particularly at night, is most unreliable. We therefore have considerable doubt as to just where the accident was; but, as it makes no difference in our judgment, we shall accept the finding of the District Court as above stated, particularly as the barge herself says that her bow was about 150 feet from the pier ends.

The District Court has found, and we accept this finding also, that the Transfer had met an upbound tow and had ported to avoid it; but we place the fault in her porting so far towards the New York shore. If the upbound tow was in the middle of the river, the Transfer had a channel of 750 feet, and she was bound to keep nearer to the middle of the stream. The mere occurrence of the collision in our judgment proves this, because the Cleary was at the very pier end when she began to back, and all she did was to back, trying to get out of the way. It may be that her judgment was bad under the circumstances, but it seems to us that a car float tow in any event comes too close to the pier ends if she collides with another tow itself at the very pier ends, which is doing, and has done, nothing but its best to keep out of the way. It was the purpose of the statute to keep such vessels out of the way of shipping, navigating in and out of slips, and this court has already held it a fault to come within even 400 feet of the pier ends. The Amos C. Barstow, 66 Fed. 366, 13 C. C. A. 515.

The decree is reversed, and a decree will be entered for the libelant against the Transfer, with costs, and for the Cleary, with costs against the Transfer.

COXE, Circuit Judge. I dissent. I think the Cleary was plainly at fault, if not solely at least jointly with the Transfer.